United States of America v. Ronald Salahuddin and Sonny L. Cooper. If the request for a two-minute rebuttal is recommended in favor of the President, understand the background of the case, and I think it's laid out pretty clearly in our brief. We understand the case. Then our first position, Your Honor, is that the Hobbs Act conspiracy that's alleged in this case requires proof that the the appellant, Mr. Saldine, attempted to or did obtain something of value from the victim under the color of official right. Now, why do we say that? Why do we say that? Well, we say it for various reasons, one of which was that that is the sole theory by which the government tried the case. I read a case, U.S. v. Powell, and there are probably other cases that said that when the circuit court is deciding an issue in a case, it should decide the issue based upon the theory that is argued at the time that the government prosecuted the case. And there's an element of fairness in that, because if you're going to prostitute the case in one way and then later argue another way, then certainly that would be basically unfair. Well, why in a conspiracy claim does the government have to prove that the defendant actually obtained the property that he was conspiring to finagle? Because in this case, both Manzo v. Manzo and Shiler v. the National Association of Women, with respect to a Hobbs Act conspiracy, with respect to a Hobbs Act conspiracy, have both held that one of the elements of the Hobbs Act conspiracy, as distinguished from other conspiracies, is that the individual, the person who is charged, must have obtained the property of another. Are you sure reading Manzo that that issue was really at issue as to be dispositive of the case, or was it spoken of, but not really the matter which was at issue, i.e., in a Hobbs Act conspiracy, do you have to prove that the defendant actually obtained one of the things that he was seeking to object of the conspiracy? Your Honor, I acknowledge clearly that the issue there was whether or not Mr. Manzo, who was a candidate, was acting under color or official right in that. The question was status. Yes, but it was said clearly in that case, with respect to, and although that wasn't the issue, it was said clearly in that case, but the other elements were met, and they listed the elements. And the first element that it set forth was the property was obtained from the alleged victim. Now, that's not necessarily limited to obtain for himself, could have obtained it for someone else. Isn't that exactly what Provenzano holds? Your Honor, accepting that proposition, in this instance, the jury clearly acquitted him of obtaining any property either for himself or for anyone else. That's the question about the completed crime. This is a conspiracy, right? Yes. So he could still be guilty of the conspiracy, many cases say this, and not guilty of the completed offense. Well, let's then go to a Supreme Court case, which I think maybe was even more directly on point. You agree that Provenzano holds that for a Hobbs Act conspiracy, the defendant does not have to obtain the property for himself, but can have it obtained for another person. I agree with that, but the fact of it is that there was no proof that that actually occurred. And the evidence, in fact, when there was an acquittal with respect to the substantive counts, the jury clearly, clearly rejected any argument, and I assume that's what you're talking about, that Mr. Sal didn't obtain or was attempting to obtain property for Cooper. But the jury rejected that argument despite the fact that that's what the state argued throughout the indictment. Well, isn't the issue even more basic than that? And that's that conspiracy, the definition of a conspiracy does not include obtaining the benefits of the conspiracy. It's an agreement which is illegal to do something illegally or to do something legally illegal. But it does not, the question is whether or not there has to be anything obtained from the conspiracy. But the traditional common law definition of conspiracy never required that the benefit of the conspiracy was ever realized. It's sufficient that the agreement was made even if it was never brought to fruition. So you have the seminal case in this matter before us as to whether or not a Hobbs Act conspiracy requires actually one of the objects of the conspiracy being realized. And the government says Hobbs Act does not require that the object of the conspiracy be obtained in order to have to be convicted, unlike some other conspiracies. Well, let me just say this. Isn't that your problem? Well, no, because let me just say this. Let's talk about the indictment and the government's argument, if I may, just for a minute and a half. The indictment in the case in paragraph 12 says, and it is alleged that the defendants, Ronald Saladin and Sonny Cooper, conspired with each other and with others to affect interstate commerce by extortion under color of official right. That is, this is the indictment, and we're entitled to rely on this by obtaining, this is what they said, by obtaining money and other valuable benefits, including demolition business and contributions from CW. First of all, it doesn't say by obtaining for whom. What it says is with the CW's consent in exchange for official action. And then it says in paragraph 13. Before you got to the words by obtaining, it talks about under a color of official right. Isn't that all that the NCOA defense of conspiracy to violate the Hobbs Act requires, is the agreement? No, Judge, it requires, let me just say this. Now, you're arguing it requires a benefit, but you're also arguing at a time when you only have about a minute and a half left. Why don't you turn to your overt act? Okay, may I just say that the Shiloh versus the National Organization of Women, I think, in my opinion, clearly says that in a Hobbs Act context, after reviewing the entire history of the Hobbs Act, says that the actual deprivation of the right is not enough, but there also has to be an obtaining of the property of another. So despite the fact that the protests were basically taking the business away from the persons who operated the abortion clinics, they said that's not enough. They had to have obtained property from you, and that did not happen. And I think that case is basically, and it was a conspiracy to violate the Hobbs Act case, and that's what we rely on specifically. Which case is that? That's Shiloh versus the National Organization of Women, handed down by the Supreme Court. I ask that you please read it, because I think that supports us 100% with respect to the uniqueness of the Hobbs Act. Now we can go to the overt act. Well, before you do, this very issue has been before several courts of appeals. The way I read it, and I think it was very plain, four courts of appeals have ruled that a Hobbs Act conspiracy does not require that an overt act be realized. Judge, Holmes, go ahead. One, the Fifth Circuit has said, no, there's got to be something, one of the overt acts of the conspiracy, reason for the conspiracy has to be realized. Now, as far as I read the cases in the Third Circuit, I disagree with you. I don't think Supreme Court has ever ruled on this one way or the other. And in the Third Circuit, I'll grant you it's a little bit at issue. It's a little bit fuzzy. But this very issue, whether or not a Hobbs Act case requires an overt act, has really never been at square all four issues in any case that I've ever seen in this circuit. Well, let me just go back to one issue. I'll read it again, but I think it's not quite as you say. Aren't the property rights questions in Shidler different than what the issue is here? I think they are different, but without any real distinction. I think that basically what they're saying is the Hobbs Act requires that you actually obtain something from the individual who is the victim. That's the important thing you read out of Shidler. Yes. All right, I want you to get to the overt act question. The red light's on. I'm giving you a couple more minutes. With respect to the overt act question, the government, again, with respect to, again, has set forth consistently that there was a requirement of an overt act in various Hobbs Act cases, and we don't want to get out of a minute. So you've read the briefs in Cale and the district court and Manzo and other places. And, of course, if you look in the model chart, it also says clearly that we're, with respect to Hobbs Act conspiracies, that, indeed, the fact is you should go to the conspiracy section. It cites the 371 conspiracy section. Under common law, you didn't need an overt act. But they say here, it says 371. Conspiracy under 371 should be applied. That's a model jury instruction. I understand that, but I'm just saying. That's not the law. That's not the law, but the model jury certainly. Do you agree with me? Under common law, no overt act was needed. Under common law, that is right. Okay. The only place where overt act is required, some would argue, is where Congress specifically said that. And I'm not so sure if I agree with that 100%. But would you agree that Congress didn't say that in defining the Hobbs Act conspiracy here? They did not say that within the statute. That is correct. So I understand Whitfield. So how do we get the overt act requirement if it's not in the statute? Because of the fact. And if it's not in common law. The government has consistently acknowledged that there was an overt act requirement, except in this case. Well, how come when the jury was charged, you never, you heard the charge. Of course, they knew the charge. You never requested the jury be charged that in order to think they have to find an overt act. You never requested that, nor did any other defense. No, nor did Ms. Fazegas. It was an oversight on my part. Well, then we're on plain error. Then we're on plain error. And the question is, is it plain error? The question is, is it even error? When the decisions in the Third Circuit are at best. Very, very money. And at worst, it's never been adjudicated. Well, and you yourself never requested something, which you say is a sine qua non of a conspiracy under the Hobbs Act. Your Honor, the record obviously will speak for itself. So I can't argue that I did something I didn't do. I can say I didn't do it because at the time, certainly it was my impression that that was a law. She didn't rule that way or she didn't charge that way. And I have to bear whatever response. She never ruled. There was never any rule against you. She didn't rule that you didn't make an application. She denied it. You never made an application. I understand what you're saying. You're saying, in effect, I never made that application. Therefore, she never denied. That's what you're, in effect, saying. And that is true. That is true. The district court obviously thought that no overdraft was required. She never charged it as a requirement, an element of the offense. I think that when you read and you say, yes, the model of charge is not law. But when you read the actual way in which the, because this Hobbs Act is, of course, very confusing in the first place. But when you read the Hobbs Act and what the charge suggests, it clearly suggests that at some point you would apply 371 where an overdraft is required. Well, why does it suggest that, as Judge Fischer said, it wasn't required under common law and there are any number of federal conspiracy statutes which do not require an overdraft? I fully understand that. That would be my theory, though. As a matter of fact, that just goes to show when Congress wants an overdraft, they know how to write it into a criminal violation. Well, let me just say, and if I have the luck for you, just changing the subject for one split second. In United States v. Gray on the issue of whether or not there was an obligation to show that a defendant did, in fact, obtain something of value, in the Sixth Circuit, they clearly held that that was the case in Gray. They actually said that in its holding, clearly. So it is not as though it was something that's coming from, and I just want the chance to read it. The court said, in addition to requiring the conspirators to agree to obtain something from another, the statute, meaning the Hobbs Act, requires the conspirators to obtain that property with the other's consent. So I just want to make sure that that is clearly law of the Sixth Circuit, and I'm asking that you find that that is now and should be the law of the Third Circuit. Mr. Ashley, we're going to have you back on rebuttal. Yes, sir. Thank you. We want to hear from Mr. Zegas on behalf of Mr. Cooper. Good morning. Alan Zegas for Sonny Cooper. Your Honor, I don't typically raise on appeal Rule 33 or Rule 29 arguments because of the standards that are implicated. Nevertheless, I sat through this trial on behalf of Mr. Cooper, and from beginning to end, I wondered why he was there. Virtually every witness who was called by the government ended up testifying on his behalf, including today, United States Senator Booker, who was called by the government, said that if he had to rank the Newark businessman who he's known over all the years and put them in three tiers, Sonny Cooper would be in the first tier at the top of that tier. And there's nobody who said different. And if you listen to those things that Mr. Cooper did say on the tape, I would submit, Your Honor, and I recognize that conspiracy is not a difficult standard for the government to meet. I don't know who first said it, who put it in the Law Review article, but conspiracy being the nursery prosecutor, however it's put. It's the barreling of the prosecutor, and they use it for alchemy. That's what they do. And that's what has happened here. I submit that if the standard were not as lax as it is in terms of the prosecution, there would be nothing brought. But having brought it, I still submit, Your Honor, that the government did not prove conspiracy. Excuse me, Mr. Zager. Did you reserve time for rebuttal? I did, Your Honor. How much? Two minutes, if I may. That's great. Starting with Mr. Minter, who testified on behalf of the city, on behalf of the government. On this Rule 33 motion. Yes. I'm dealing with the Rule 33 motion. We have abusive discretion as our standard. Correct. That's correct. And recognizing that. You've got a heavy burden to show that the court was wrong in finding that the verdict was against the weight of the evidence. Well, I don't think so with respect to Mr. Cooper. That's why I started as I did. You're only on Mr. Cooper. With respect to Mr. Cooper, this was the testimony. And this is from the Newark building person who was called by the government. Mr. Cooper was typically the lowest bidder. He was a minority. He was always conscientious in doing the work. He could be called at any hour of the day, and he'd be there to do whatever demolition was necessary in case of a fire. He had a proven track record. He obtained jobs on merit. He received work from Newark long before Mr. Salyardine took office. What did he attempt to conceal? When he wrote a check to Mr. Salyardine, he put on the face of the check repayment of cash loan. When Mr. Mazzocchi, the government's operative, is trying to induce Mr. Cooper to engage on tape in wrongful conduct, Mr. Mazzocchi tells Cooper that he'll give him cash. What does Mr. Cooper say? He goes, it don't make no difference. This was an unsophisticated man. His testimony that he went to a political fundraiser in his deli clothes. Well, how about some of the other stuff that they had? When Cooper tells Mazzocchi, quote, he said to me, whatever we do, we have to, you know, I have to eat and he has to eat. That sounds like they were going to dinner all the time here, and we're talking about eating all the time. This is not Mr. Cooper speaking. I know, but he's talking to Cooper. But this is what's happened. Yes, Mr. Cooper sits there, and you can look through every single transcript where you see the name Cooper. The man barely says a word. And those words that he did say, we spoke more than four or five words. He said precisely what I'm quoting to your honors. No, he's there. But in addition to the testimony for Mazzocchi, he's not the pillar of society. We recognize that. And he's a racist. He's the lowest of low. But he's talking to Cooper. And Mazzocchi said something like, all I got to do is feed Sonny. And Cooper answered, yeah. Now, what are they talking about? Going to dinner? Or what are they talking about? Or are they talking about bribing public officials? I submit to you that there's no evidence of that yeah, or even it's not even ambiguous that that yeah was intended by Sonny Cooper to indicate his agreement to do something unlawful. Mr. Cooper had as much work as he needed. He testified that he got up at 430 in the morning to sweep the streets with his machine. He would then go to work. He had a liquor store and a deli. Most of his day was dedicated to that or hauling garbage. At night, if there were a fire or even a fire during the day, he'd be out there demolishing a house that needed demolition because nobody else could be found to do it. The man worked incessantly. He didn't need the business. And the business that he got, I'm sorry, Your Honor. Let me focus you where perhaps. Yes. Don't you, let's just say arguably, have a stronger argument on your Rule 29 motion? Don't you have better legs to stand on here on Rule 29? With respect to Rule 29. Our standard of review is different than abuse of discretion. Yes, in some ways, except that the government is given every benefit of the doubt with respect to Rule 29. Yeah, but in Rule 33, you know, the court's given every benefit of that. Well, the court has discretion, but it's not unbridled discretion. Yeah, but you're talking about credibility issues. Why don't you focus on Rule 29 a little bit? There as well. You're giving the benefit to the government. You know, Judge Cowan quoted Mr. Cooper saying, yeah, in response to, you know, wouldn't he like to benefit from whatever the project might be? The fact is that, and Mr. Mazzocchi testified to this, anything that Mr. Mazzocchi had received by way of business from the city, where Mr. Cooper was involved because he did demolition for him, he was paid precisely what he asked for, which is lower than almost any other person would ever request. That's the testimony in the record. This is who this man is. He's got a daughter who's, I think, 16. She got into MIT. He's just a hardworking soul, and he didn't get a penny. Not a penny from any of this. He didn't get anything, and it wasn't his. He had no state of mind that was proven to suggest that he was attempting to enter into agreement to get something unlawfully. It's simply not there with respect to this man. And he was drawn into this because of things that the government does have on tape that sounds salacious, you know, that made headlines, and that papers love quoting. But the fact is, if you look and you parse the evidence, you see what wasn't produced. I submit that a case was not made against Mr. Cooper where the government had proved every element of the offense of conspiracy charged beyond a reasonable doubt, as it was obligated to do. Whether your honors judge that under Rule 29 or Rule 33, I submit that if you take the trial as a whole, and there were four acquittals out of five charges in this case, albeit that Mr. Cooper was not charged, I believe, in count four. The fact is that there is nothing that Mr. Cooper ever did, asked for, got, that he didn't earn. And there's no suggestion that he was in any way attempting to do something illegal or that he was even aware of the content of other discussions occurring outside his prisons. It's really horrific, I think. And the judge gave him a probationary sentence. And I believe, recognizing the role, even if you assume guilt, which the judge found that he was guilty, I understand that. She decided the motions as she had. But I submit that the reason she sentenced, as she did, was because of the, at best, at best, the margin. Let me ask you a question this way. Even if everything you say is true, the only thing he got convicted of was conspiring. I understand that, Your Honor. Was conspiring with Mr. Salahuddin to violate the Hobbs Act. But there's no evidence that he engaged intentionally in such a conspiracy. And that's where I have difficulty. He's convicted of the crime of conspiracy. He's going to, you know, the rest of his life will be spent, you know, with a criminal record, and he's in his 70s. When the man did nothing that was intentional, and certainly nothing that was intentionally criminal. And the record nowhere suggests otherwise, I submit. You have a lot of language on tape that's where he might just be sitting there, or where others are talking about other kinds of business. But he's not the one who's participating. Every dime that man has ever gotten, he's earned. And he's never sought to enter into, and there's no evidence that he did enter into, an agreement with an illegal purpose. Okay. Yes, Your Honor. Judge Wilson wrote an opinion on your motion for against the weight of the evidence. And of course, we have to give that some consideration and deference. But where in that opinion did she go, was she in error? When she wrote the opinion post-trial on your motion, your post-trial motion, that the verdict was against the weight of the evidence? I think if you look at her opinion, she found time and again, that certain facts could be interpreted in Mr. Cooper's favor. But you're judging, you know, using this Rule 29 standard, she was giving the government the benefit of the doubt. But I submit, take in as a totality, even if you take into account how the judge, you saw some evidence could be looked at. Your Honor, still contest. And there are cases, certainly cases. Well, her position basically was, look, the arguments that you're making like to us right now, you made to the jury. You made, these are jury arguments, not appellate judge arguments. And that, her opinion is, how does she go on? There would never then be a new trial motion granted, or a motion for judgment of acquittal, because if the arguments made to the jury and the jury didn't accept it, then of necessity, we're suggesting that the judge has to put her seal of approval on it. I submit that the standard is not one that gives the judge unbound discretion. And in this case, there was so, so, so little evidence where Mr. Cooper's name was even mentioned in a way that suggested criminality, that the judge, had she properly exercised her discretion, would have found that either Mr. Cooper was entitled to a judgment of acquittal, or that the verdict was against the weight of the evidence. And it took a long time for Her Honor to write the decision. I know she obviously, this is something that she probably got a tour at her. It was not an easy case. But I submit that at the end of the day, her discretion was not properly exercised. And you certainly have it within your powers. We'll have you back on report. Thank you. Thank you. Mr. Is it Feeder? There's a lot of issues in this case. You can address them however you choose to. But you were here and heard what counsel focused on, particularly the four issues they focused on. Legal alchemy for conspiracy. Legal alchemy. Yes. Wizardry, I think I said in my brief. Alchemy. Legal alchemy was, I believe, the district court opinion in Manzo. Well, I'll start with the question that the court invited the parties to address specifically. And that's whether there's an overt act requirement for Hobbs Act conspiracy. There is no overt act requirement for Hobbs Act conspiracy, because there is no such provision. How about Manzo and all these cases in the Third Circuit? They specifically say that there is one. So even though it wasn't that issue, but they say it was. So your Honor's correct. The issue, the overt act question was not at issue in Manzo. The focus in Manzo is whether a candidate for public office could extort under color of official right, having not been an official. And the government argued that it could. And your Honor, in an opinion drafted by Judge Fisher for the court, responded that that was not the case. But the overt act question was not briefed by the parties. It was not the focus of the opinion. But there is reference to overt acts in that opinion. There's a reference, there's a quotation. And the model code, the model charge for New Jersey requires it. That's not the case, your Honor. The model code, the model instructions for the Third Circuit say, and I quote, it should be noted that a Hobbs Act conspiracy does not require proof of an overt act. And that's at section 6.18.1951 in the comments to that section. Mr. Ashley alluded to a cross-reference to jury instructions for 371 that could be given when the Hobbs Act is charged as a conspiracy. But there's no indication that the overt act portion of that instruction should be given. Because again, as the circuit courts have found, there is no overt act requirement for Hobbs Act conspiracy. Well, that's part of the alchemy you're floating here. You put that there were overt acts in this conspiracy. And you get the defendants to prove that the overt acts are not true. And they're looking one way, and you're saying something exactly opposite. You say that these are the overt acts that prove the conspiracy. And you never prove them. And they say they came to trial prepared to prove there were no overt acts. They proved it. And now they're stuck with a Hobbs Act conspiracy claim. So that you amended the indictment, in effect. You said you're going to prove one thing, which they were prepared to meet and met. And now you wind up saying that they violated the act. We charged a Hobbs Act conspiracy. We also charged an attempt count under the Hobbs Act. And then we charged substantive violations of section 666. And you charged overt acts for the conspiracy. We did. The government at no point characterized those as overt acts. There was evidence that the government... Well, what were they? I'm sorry? If they were overt acts, what were they? It was evidence that was method and means that were undertaken in support and furtherance of the conspiracy. But they were not, as a legal matter, are not overt acts. Yeah, but isn't that the definition of an overt act? But where the statute does not require proof of an overt act, the government is not required to prove an overt act. So evidence... You acknowledge that you amended the indictment. Well, we did not amend the indictment because we charged a Hobbs Act conspiracy, which does not require proof of an overt act. We at no point called them overt acts. It's evidence that we felt was in support of our case. And the fact that that evidence... We don't know why the jury did what it did. We think that there was more than sufficient evidence for the jury who have convicted on all five counts. They argue that at least your office has taken a position that an overt act was required under a Hobbs Act conspiracy. I don't know where they're getting that from. The issue may come from Manzo. And respectfully, Your Honor, I've reviewed the hour brief in Manzo, which was written by Mr. Morimarka, who's sitting back there. And at no point was the term overt act ever used. Again, you have to remember... That's part of the alchemy. That's right, Your Honor. You say one thing and you do another. I know. My wife accuses me of that all the time. Well, I'm accusing you of it. No, OK. Again, it's not alchemy because there is no requirement. Every circuit court to have addressed this in the wake of the Shabani and Whitfield opinions has so held. And I would submit, Your Honor... What about Supreme Court in Scheider versus now? Like Manzo, Scheider addresses a different element of Hobbs Act conspiracy, namely the type of property that defendants have to seek to extort. In that case, it was deemed... Much like the Supreme Court just ruled this past term in CCAR, there was not a sufficient property interest because it was not... Couldn't be sold or transferred. It just wasn't the type of property that Congress had in mind in enacting the Hobbs Act. But at no point was there an overt act requirement imposed in Scheider or was that at all the focus of that opinion? All right. So you say no overt acts required. Let's stay with Scheider for a second. Go to the second point of Mr. Ashley's argument. What about the benefit? Do you have to show that at least as to Mr. Salahuddin... How's it pronounced? Salahuddin? I believe it's Salahuddin. But as at least as to Mr. Salahuddin, where was the benefit? There's no requirement that the government has to prove that the conspiracy, that the Hobbs Act conspiracy was successful. Your position is all they have to do is agree to engage in this conspiracy. That's correct, Your Honor. It's in Manzo, for instance, you wrote, Your Honor, that the government need not prove every substantive element to establish an inchoate offense. In this case, there's no requirement that the government has to prove that the conspiracy was successful. That's clear from Gennady. And I think what they're doing is taking snippets from Scheidler. They're taking snippets from Manzo and reading them totally divorced of any context. But all these snippets have some force to them. They're not without good argument. They're not frivolous. And also, you're facing the rule of lenity. It appears that in New Jersey, most lawyers would have said that there is an over-an-act requirement to the Hobbs Act. And here you have a case, a Hobbs Act case, where they never proved the defendants did anything except conspired. Respectfully, Your Honor, I don't see how lawyers in New Jersey would think that there was an over-an-act requirement for Hobbs Act conspiracy. Again, the Third Circuit's model charge says that the Hobbs Act conspiracy does not require proof of an over-an-act. Practitioners rely on those instructions. And so I'm not sure why practitioners in New Jersey would assume there was an over-an-act. I mean, this may get at part of the problem, which is that Section 371, which is perhaps where the most case law comes from on conspiracy law, certain elements of Section 371 apply. The same logic applies under the Hobbs Act. So a lot of times, you will get an opinion that makes reference to a case that was decided under 371, which is a different statute. And importantly, 371 has an express over-an-act requirement. You can't name one case out of New Jersey, during my career anyway, that you can't name one case where anyone was convicted of a Hobbs Act conspiracy, unless they were also convicted of some substantive offense. Not one. Well, I would submit that the failure of the government to identify a case, I will go back and I will comb the records to see if I can find something like that. The fact of the matter is that there is no requirement that an over-an-act has to be shown for Hobbs Act conspiracy. I'm talking about the rule of lenity and the rule of the amendment of the indictment here, and the situation where defense lawyers are coming to this trial. They're going to focus on disproving the over-an-acts. In terms of resolving this case, Your Honor made an important point at the beginning. This wasn't raised below. So we're reviewing this for plain error. And that rule of lenity argument is going to be reviewed for plain error. And so when you look at what the Third Circuit model instructions say, they say there's no over-an-act requirement for Hobbs Act conspiracy. I'll refer you to, there was an NPO, which I normally would not refer to up here, but I think it's relevant in this case, case called Singleton. And it was issued last month. It was written by Judge Ambrose. And I can give you the citation for that. 2014 Westlaw 1706266. And it notes that the Third Circuit hasn't settled the question of whether there's an over-an-act requirement for Hobbs Act conspiracy, but it recognizes the conflict. And Judge Cowan, you used words like muddy and fuzzy. And taking Singleton and also recognizing that Third Circuit precedent may be, in fact, muddy or fuzzy. It can't be a plain error to not charge an over-an-act requirement for Hobbs Act conspiracy. And certainly it wasn't prejudicial because we provided plenty of evidence from which a reasonable jury could have concluded that over-an-acts were met. Again, we don't have to meet that standard. There wasn't an error. It certainly wasn't plain. But even still, we submitted copious evidence from which a jury could have concluded that there were over-an-acts. All right, let's go to Mr. Cooper. So Mr. Zegas said that he sat through the trial. What I'll add is so did Judge Wolfson. And Judge Wolfson, who's in the best position to make an assessment having viewed all the evidence, having heard all the testimony, seeing the impact of that testimony and the recording after recording after recording on the jury, was really best situated to make the determination. Whether the verdict was against the weight of the evidence. And the standard of review, as you've noted, Judge Fisher, is extraordinarily high on Rule 33. Reversals of decisions on Rule 33 are disfavored. And it's only when you're in serious danger that an innocent person's been convicted. And that's just not this case. Well, you don't really have any words out of his mouth. To have him sitting there, fact of it, happy with people that he does business with. And is he a product of the ego of Salahuddin? You don't have him doing anything except sitting there, in effect, while everyone is talking about a crime, a bribery. And you have a situation where presence at a crime is not an offense yet in America. And he's not agreeing to do anything, is he? Yes, he is. Mr. Cooper says on a recording, on video, whatever we do, I have to eat. And he, referring to Mr. Salahuddin, has to eat. He says that to Mr. Mazzocchi. As Judge Collin noted earlier, a lot of these recorded conversations are in terms of eating and meals. And in fact, at one point, I think somebody says, well, you know, you can't always give a man a salad. Sometimes you've got to give him a steak. And Cooper says that's right, or something like that. That's correct, Your Honor. So these are all kind of cryptic. Now, was that argued to the jury, in terms of this is what he meant, this is what they meant, kind of stuff? I mean, I don't think they had an explanation for what was meant by eating. I think it's very obvious what they meant by eating, which was that they were going to get extorted benefits. It's never been decoded. Everyone has to eat. Well, I mean, how do you get from that to this is, he's agreeing that they're going to, how do you get to that from decoding? I mean, this would take a cryptograph expert. That was, it's a determination made by the jury. There's sufficient evidence to support the determination made by the jury. There's an inference to be drawn, I suppose. They could draw an inference that they were really just talking about T-bones and Cobb salads. That's not what, if you look at the evidence, and you read it, and you see how this was presented to the jury, that's not a fair inference. It's an inference, but it's not an inference that the jury was required to draw. And Judge Wilson acknowledged that, and said that the jury makes this determination first, and that she wasn't in a position to draw an adverse inference, and so she affirmed the prediction. So, in other words, if there's a permissible inference that could be drawn from this kind of recorded conversation, then the evidence is sufficient to support a conspiracy. That's your view. Well, this is just one piece of the evidence against the defendants. There are numerous statements made by Mr. Salahuddin, where Mr. Salahuddin is describing how he was going to influence officials, how he was going to solicit contributions that would be used to demonstrate that Mazzocchi was a friend of the administration. Those don't necessarily have eating terms. There's other terms of concealment, too. It can't be that if you use... Those are Mr. Salahuddin, not Mr. Cooper's statement. Yes, but Mr. Cooper, the jury could readily infer from the evidence that Mr. Cooper, and conclude, that Mr. Cooper was a member of this conspiracy, that he entered the conspiracy willingly, knowingly, and he says, whoever do best by me will do it. That's one of the first things he says to Mr. Mazzocchi. He understood, before he even met with Mazzocchi, how this was going to work, because the language is syncing up with what Mr. Salahuddin says. Well, the language that you just quoted, that would be true with anyone, not a thief. That would be true of anyone. Everyone wants to go with someone that can do something for them. But is there enough here from which a district judge could conclude reasonably that a jury can infer beyond a reasonable doubt that he's part of a conspiracy? Or do we have enough here that maybe there should be a new trial? Because the proofs here are very slim on Cooper. I would disagree on the depth of the proof on Cooper. But what I will say is that this court has to weigh the evidence in the light most favorable to the government. That's, in fact, what Judge Wolfson did in rejecting the Rule 29 motion that was raised below. And I submit that there was more than sufficient evidence for a rational trial, in fact, to find beyond a reasonable doubt that Mr. Cooper was a participant and a member of this conspiracy. Mr. Cooper accepted work from Mr. Mazzocchi that he knew came, that was steered to him by Mr. Salahuddin. He understood the contours of the conspiracy, and he intended to benefit by it. If there are no further questions, Your Honors, I will close. Well, let me just make this comment, you know. One reason for my hesitancy is that these defendants were acquitted all of the substantive counts, right? That's correct, Your Honor. So, I don't know. So, in a sense, you know, I tend to discount, I'll call that evidence. And if you discount that, then all you have are these, I think these recorded conversations, right? And most of that has to do with Salahuddin, very little with Cooper. Mr. Cooper is at a number of, he's at several meetings with Mazzocchi and Salahuddin. And there's a conversation. But as Mr. Zeger said, you know, most of the time, apparently, we don't have the video, but he's just sitting there. Judge Wolfson acknowledges. Judge Wolfson said he was perhaps the less vocal member of the conspiracy. I can't challenge that. But what I can say is that there was plenty of evidence for much a jury to conclude that Mr. Cooper was a member of this conspiracy. And just to add, Judge Tashima, you can't look at the acquittals to assess the sufficiency of the count of conviction here. That's very clear from Powell. And it's clear from this Court's precedent as well. Okay, Mr. Peter, thank you very much. Thank you very much, Your Honors. And we'll have Mr. Ashley back on rebuttal. Mr. Ashley, you gave you a lot of extra time. Is there anything you want to add? Very quickly, Your Honor, very quickly. With respect to whether the government argued in Manzo that an overt act was in fact required, I think it's quite clear. At 636 Bed 3rd at 70, the government argued that the government had established its case because the government had demonstrated that both elements of the Hobbs Act conspiracy had been met, one, a criminal intent, and two, an overt act. And they specifically did say that. Where do you see that? 636 Bed 3rd at page 7. But more equally important is the fact that just generally speaking, when you try a case, and I tried this case, obviously, you look at the indictment and you evaluate the indictment and what it says. And then you try to case predicate on the theory that you're going to, that the government has to prove this beyond a reasonable doubt. And you marshal your defense around that so that when the government says, no matter what you want to call it, what rubric, that they conspired by obtaining the property of another in that they obtained this demolition business, they obtained these contributions, they obtained $5,000. And so you spend hours racking your mind about how you're going to get around this and how you're going to cross-examine. At the end of the day, you cross-examine. The jury finds them acquitted of all of these things. And then you say, OK, was there an attempt? They find, well, you're acquitted of attempting to do those things. And the government stands up. And you ask the government, well, what is it they, what basis on what basis they convicted the defendant? The government said, we don't know. They said, what am I supposed to tell my client? Why did we get convicted? I said, well, the government doesn't know and I don't know either. All I'm trying to say is that this whole idea of whether we got a trial just from a totality aspect is laid out in various ways and is shown in various ways. The indictment itself never made these arguments that they didn't make before. I was going to read, but only at one minute. I was going to read a very eloquent summation where the government said, what happened in this case, and I can still hear, what happened in this case is Mr. Salvin and Mr. Cooper extorted from the defendant his property and also extorted from the defendant the contributions. They had forgotten about the $5,000 because they didn't even ask Mr. Saladin about that at all in a two-day cross-examination. Not at all. And didn't mention in the summation. So they just walked away from an entire count. Just walked away from it like, see, we're going to go another direction. So at the end of the day, that's what they told the jury. And so then the jury acquits these individuals of exactly that. And then some, and we're here. And I'm saying, well, they did, despite the fact that it's clear, and we had a right to, we have some rights. This is how we defended the case. And we had a right to defend the case that way because that's what the government says. That is what we say the law says. But more importantly, they cannot now come in. And I hear all these things about Alcott. Well, you defended the case well, and you won on four or five counts. But the inchoate charge of conspiracy doesn't require the government, under their theory, to prove much. But something. That's all I can say, Your Honor. They argue they proved the agreement. Well, Your Honor, I gently say that I just wanted to, that that's my position. And that certainly the issue of whether my client acted under the official, under the color of official right, we say is demonstrated by the fact that throughout the entire trial, and this is the second aspect, there's no time, and he's an informant, that he even approached Mr. Saladin and say, how much do you want? What are you looking to get from this? How much do you want? Well, here it is. Not one time, 18 months. Not only that, not one time did Mr. Saladin ever ask him for anything. I understand. We understand your position. Yes, sir. Mr. Zegas. I would invite Your Honors to take a look at page 37 of the government's brief, because this is this is the kind of thing that was done in this case. In the second full paragraph, quote, if the government lacked evidence that defendants, using a plural always, use magic terms, signify a conspiracy, it is because defendants deliberately avoided using them. Instead, they spoke, quote unquote, Chinese and talked in, quote unquote, circles. See also, quote, you understand what I'm saying in English? End quote. Not one of those, not one, not one of those quotes is Mr. Cooper's or Mr. Cooper's words. These eating metaphors. This is this is not Mr. Cooper who's talking at length about these things. That's not him. You can watch the tapes. You can listen, see what the transcripts are. Mazzocchi on the stand admitted that he only paid Mr. Cooper for legitimate work performed. He admitted that Cooper never asked Mazzocchi for a bribe. He admitted that he had never been approached by Mr. Cooper. On tape, you can hear him. Mr. Cooper say after he's offered cash by Mazzocchi, would you rather have cash or check? He goes, it doesn't make a difference. On the check that Mr. Cooper writes, Mr. Salyutin, repayment of cash loan. No, there's nothing in this record, I submit. That rise to level that supports the existence of an agreement on the part of Mr. Cooper to do something unlawful. And this is proof. Page 37 of the government's brief. You take a look at it, see where they lump one defendant in with the other. And it's not right. It's not right. They deserve separate treatment. The judge instructed the jury as to that. And I submit, based upon what the judge had examined, that the way that the court should have come out was that Mr. Cooper was, in fact, entitled to a neutral trial or was entitled to a judgment of acquittal. Thank you very much, Your Honor. And we thank all counsel for the case. It was very well argued. And we take this matter under. Thank you. Thank you.